IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| DALE DEVON SCHEANETTE, #999440 | § | |
| VS. | § | CIVIL ACTION NO. 9:05cv231 |
| C. BISCOE, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Dale Devon Scheanette, a death row inmate confined at the Polunsky Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned pursuant to 28 U.S.C. § 636(c).

The original complaint was filed on November 22, 2005. The Plaintiff complained about an ant problem in his housing area during the summer of 2005. After reviewing the complaint, the Court decided to conduct an evidentiary hearing, consistent with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted on April 11, 2006. Regional Grievance Coordinator Chip Satterwhite, Warden Rick Thompson and Nurse Thomas Maciel attended the hearing in order to answer any questions the Court may have concerning the Plaintiff's security or medical records.

Only sworn testimony and authenticated records were accepted during the *Spears* hearing, and the evidence submitted by prison personnel was considered by the Court only to the extent that it does not contradict the inherently plausible and credible evidence offered by the Plaintiff. *Vernado*

1

*v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991). The Plaintiff gave the Court permission to review his prison records.

The Plaintiff testified that the problem with the ants began on June 24, 2005. Little black ants were coming through cracks in the wall. They were everywhere, particularly around the sink and toilet. They would appear in his food. He tried to keep them off of his bed, but it was hard to sleep because of the ants. He complained to the officers that were on duty, who purportedly reported the problem to maintenance personnel. The problem had not been resolved by July 7, 2005, thus he filed a Step 1 grievance. On July 13, 2005, he was moved to another cell pod where there was no ant problem. The Plaintiff testified that the exterminator did not show up until August 19, 2005.

The Plaintiff testified that he did not know how many times the ants actually bit him. He did not submit a sick call request due to ant bites. He complained that neither the guards nor medical personnel provided any medication, such as alcohol wipes.

The Plaintiff testified that he sued Warden Biscoe because he was the warden over death row. He noted that Warden Biscoe may have been replaced by the time the ants were a problem. If so, he intended to sue the warden who was in charge of death row for failure to train. He sued the grievance investigators for failing to resolve the problem. He noted that he did not have all of the facts and it was unclear what they actually knew. He sued Maintenance Supervisor McCarthy because it took maintenance one and one-half months to have the area exterminated. He argued that the response was inappropriate. He sued Director Dretke because he is the head of the prison system and is responsible due to supervisory liability. He sued John Doe #1 Dispatcher for not having the area promptly exterminated. He sued John Doe #2 Exterminator for taking so long to exterminate the area. The Plaintiff testified that he believes that some of the defendants were negligent, while

others were deliberately indifferent. It is noted that he intended to include a supplemental state claim for negligence.

Warden Thompson testified under oath that ant problems occur from time to time. Each region of the prison system has an exterminator, who covers about seventeen units. They spray on a regular schedule. Warden Thompson testified that he or other officials are not permitted to bring a can of Raid to the unit to self-exterminate ants. Every chemical introduced into the unit must be documented. A unit may have a local applicator, but these individuals may spray outside only.

Nurse Thomas Maciel testified that he had no medical records regarding the Plaintiff.

Regional grievance coordinator Chip Satterwhite testified that the Plaintiff had exhausted his administrative remedies regarding the incident but not regarding any of the specific defendants. The Plaintiff gave his permission for the Court to review prison records submitted by the prison system. The grievance records confirm that the Plaintiff filed a Step 1 grievance on July 6, 2005. A response was signed on August 17, 2005. The response specified that the exterminator had sprayed the unit during the first week of August, 2005. The Plaintiff was advised to notify Mr. Jackson if he was still having an insect problem. The Plaintiff filed a Step 2 grievance noting that the exterminator did not actually show up until August 19, 2005. The Step 2 grievance was denied on October 25, 2005. It was noted that his cell had been exterminated. The Court notes that the Plaintiff also submitted the same grievance records with the original complaint.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. The standard of determining whether the conditions are cruel and unusual "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1984). Conditions "alone or in combination" may amount to a

constitutional violation. *Id.* at 347. In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court emphasized the Constitution does not mandate comfortable prisons and only deprivations denying "the minimal civilized measure of life's necessities" form the basis of an Eighth Amendment violation. Conditions that are "restrictive or even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. at 347. At the same time, in order to state a cognizable claim, a prisoner must allege facts showing that jail officials acted with a culpable state of mind -- that they acted with deliberate indifference. *Wilson*, 501 U.S. at 302-303; *Alberti v. Sheriff of Harris County, Texas*, 937 F.2d 984, 1004 (5th Cir. 1991).

The Fifth Circuit has considered a variety of cases which illustrate the type of conditions that are necessary to be considered cruel and unusual. In *Bienvenu v. Beauregard Parish Police Jury*, 705 F.2d 1457 (5th Cir. 1983), the Court held that allegations of a cold, rainy, roach-infested jail cell, with inoperative toilet facilities stated a cause of action. Similarly, allegations of cold cells with rats crawling all over prisoners state a cause of action. *Foulds v. Corley*, 833 F.2d 52 (5th Cir. 1987).

The Court has found very little Eighth Amendment case law regarding ants in prisons or jails. There is no published Fifth Circuit case law. In *Stephen v. Hewitt*, 73 F.3d 370 (9th Cir. 1995) (unpublished), the Ninth Circuit discussed problems with ants and concluded that the lawsuit should be dismissed because there was no evidence that anyone acted maliciously and sadistically for the very purpose of causing harm. *See Wilson v. Seiter*, 501 U.S. at 302. In *Brown v. Withrow*, 985 F.2d 559 (6th Cir. 1993) (unpublished), the Sixth Circuit noted problems that included ants and that the prisoner was moved to another cell after four days. The Sixth Circuit concluded that the conditions, while unpleasant, were not below the constitutional standard of the minimal civilized measures of life's necessities. In *Wilson v. Horn*, 971 F.Supp. 943, 946 (E.D. Pa. 1997), the court held that the

subjective element was not met since the prisoner admitted that the prison system employed an exterminator and that the problem had been resolved.

In the present case, the Plaintiff did not include as defendants any of the officers he initially complained to about the ants. The first people he named as defendants who had any involvement in the matter were the grievance investigators. The Plaintiff filed a Step 1 grievance on July 7, 2005. He was moved to another cell where there were no ants on July 13, 2005. The somewhat prompt response of moving him does not support an inference that the grievance investigators nor anyone else for that matter acted maliciously and sadistically for the very purpose of causing harm. Furthermore, the prison system had a schedule to regularly exterminate the unit. Problems with ants and other pests were not ignored. The facts as alleged and developed do not satisfy the subjective element of an Eighth Amendment claim. Stated differently, he has not alleged facts showing that any of the named defendants knew about and disregarded an excessive risk to his health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The objective element of an Eighth Amendment claim was also lacking. The Plaintiff was exposed to ants for a little over two weeks. All people, including prisoners, have to contend with ants from time to time. Such conditions, while unpleasant, were not below the constitutional standard of the minimal civilized measures of life's necessities. The Court has no doubt that there would be a constitutional violation at some point in time where an inmate is continuously exposed to an infestation of ants, but the limited exposure here did not rise to the level of a constitutional violation.

The Plaintiff particularly focused on the delay before the exterminator arrived. The problem began in late June and the exterminator arrived in mid-August. It must be reiterated that the

Plaintiff's personal problems were resolved on July 13, 2005, when he was moved to another pod. Nonetheless, an inmate does not have a basis for a potentially meritorious Eighth Amendment claim based on a delay unless there was deliberate indifference that resulted in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) (deliberate indifference in the context of a medical claim). In the present case, the Plaintiff testified that he did not submit a sick call request. Nurse Maciel likewise testified that he did not have any medical records. The Plaintiff's exposure to the ants were no doubt annoying, but he did not suffer substantial harm as required to proceed.

The lawsuit should be dismissed for the additional reason that the Plaintiff has not shown a basis for liability against any of the named Defendants. In order to successfully plead a cause of action in a civil rights case, the Plaintiff must enunciate a set of facts that illustrate the Defendants' participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). None of these individuals participated in the alleged acts of misconduct. The only other way that any of them could possibly be implicated in these claims is through their supervisory capacity. Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied.

In conclusion, the lawsuit fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The lawsuit should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also desires to bring supplemental state law claims, such as a claim for negligence. Since the primary constitutional claims are frivolous, the Court should not consider

the supplemental state claims.  The state claims should be dismissed without prejudice.  *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966);  *Hamill v. Wright*, 870 F.2d 1032, 1038 (5th Cir. 1989);  *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).

Finally, the Court notes that the present lawsuit is the third time the Plaintiff has had a lawsuit dismissed for failure to state a claim upon which relief may be granted or as frivolous.  His other two cases were *Scheanette v. Riggins*, No. 9:05cv34 (E.D. Tex. March 15, 2006);  *Scheanette v. Dretke*, No. 9:05cv179 (E.D. Tex. Nov. 10, 2005) (on appeal).  It appears that *Scheanette v. Dretke*, No. 9:05cv155 (E.D. Tex. Oct. 18, 2005) (on appeal) should also be a strike, but the Order of Dismissal improvidently adopted the wrong Report (docket entry #5), when it should have cited a subsequent Report (docket entry #6) that considered the case on the merits.  Nonetheless, with three strikes, the Plaintiff may not proceed in any future lawsuits or appeals *in forma pauperis* unless he is under imminent danger of serious physical injury.  28 U.S.C. § 1915(g).  It is accordingly

**ORDERED** that the complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).  All motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **10** day of **May, 2006.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE

7